UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AIMEE S. HELTON,<br><br>        Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | No. CV-04-3025-CI<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND ENTERING JUDGMENT FOR<br>DEFENDANT |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 11, 15), submitted for disposition without oral argument on March 28, 2005. Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Jeffrey H. Baird represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6.) After reviewing the administrative record and the briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment and directs entry of judgment for Defendant.

Plaintiff, who was 25-years-old when the Administrative Law Judge (ALJ) issued his decision, protectively filed for Social Security disability and Supplemental Security Income (SSI) benefits on January 9, 2001, alleging an onset date of October 1, 1997, due to mental impairments, specifically depression.  (Tr. at 81.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND ENTERING JUDGMENT FOR DEFENDANT  - 1

Plaintiff attended special education classes up to the ninth grade. Past work included cashier, card stocker for Hallmark, and equipment washer at an orchard. Following a denial of benefits, a hearing was held before ALJ Verrell Dethloff (ALJ). The ALJ denied benefits and review was denied by the Appeals Council. This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

**ADMINISTRATIVE DECISION**

The ALJ concluded Plaintiff was insured through the date of his decision for disability purposes[1] and had not engaged in substantial gainful activity. The ALJ found Plaintiff suffered from severe impairments including borderline intelligence, adjustment disorder, and sociopathic personality traits, but those impairments did not meet the Listings. Post traumatic stress disorder (PTSD) was found to be non-severe. The ALJ found Plaintiff's testimony was not fully credible. The ALJ further found Plaintiff's residual capacity was limited to all exertional levels not involving complex instructions or tasks, vulnerable populations, or independent responsibility. (Tr. at 28.) The ALJ concluded Plaintiff was able to return to her past employment as a cashier. Thus, the ALJ concluded Plaintiff was not disabled.

**ISSUES**

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff asserts the ALJ erred when he (1) improperly rejected the opinion of

---

[1] Plaintiff's date of last insured is March 31, 2000. (Tr. at 27.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND ENTERING JUDGMENT FOR DEFENDANT  - 2

the treating physician; (2) improperly rejected the opinion of the lay witness; and (3) conducted an inadequate step four analysis.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his

age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**ANALYSIS**

1. Severe PTSD

Plaintiff asserts Dr. Birdlebaugh, her treating physician, diagnosed depression and PTSD and concluded she was disabled. (Tr. at 159-160, 184.) Plaintiff contends the ALJ rejected this opinion with the generic assertion it was not supported by the medical record. Defendant contends the ALJ correctly relied on the opinions of the examining physicians and concluded Plaintiff suffered from severe mental impairments including borderline intelligence, adjustment disorder, and sociopathic personality traits, but not PTSD. It is undisputed there were no physical limitations.

In a disability proceeding, the treating physician's opinion is given special weight because of his or her familiarity with the claimant and the claimant's physical condition. *See Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). If the treating physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if he or

she states state specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605. While a treating physician's uncontradicted medical opinion will not receive "controlling weight" unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," Social Security Ruling 96-2p, it can nonetheless be rejected only for "'clear and convincing' reasons supported by substantial evidence in the record." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Furthermore, a treating physician's opinion "on the ultimate issue of disability" must itself be credited if uncontroverted and supported by medically accepted diagnostic techniques unless it is rejected with clear and convincing reasons. *Holohan*, 246 F.3d at 1202-03.  Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding the treating physician's opinion. *See Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 604.  Here, the evidence is conflicting whether Plaintiff suffers from severe PTSD. Thus, the ALJ was required to provide specific and legitimate reasons supported by the record to reject the opinions of treating physician as to that diagnosis.

The ALJ noted in his opinion:

> Claimant also has a diagnosis accorded by Dr. Sandra L. Birdlebough of post traumatic stress disorder.  Dr. Birdlebough offers an opinion that the claimant can work

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND ENTERING JUDGMENT FOR DEFENDANT  - 5

> 1  only part time "probably." I accord no weight to this
> 2  assessment, and note that Dr. Birdlebough specifically
>    indicates that she is not the doctor who told claimant not
> 3  to work. An equivocal opinion of treating source need not
>    be accorded significant weight.
>
> 4  In addition, Dr. Jay M. Toews indicates in his
>    psychological examination report that the PTSD is a rule
> 5  out diagnosis in this matter. In light of claimant's
>    history of false claims regarding sexual assault, I find
> 6  her allegations of PTSD questionable. I find the record
>    fails to support this diagnosis and that it is accordingly
> 7  not severe. Where a medically determinable impairment
>    does not exist, a conclusion of "no severe" impairment is
> 8  indicated.

(Tr. at 19-20, references to exhibits and cases omitted.)

> Exhibit 7F indicates that claimant was seeing a marriage
> counselor who diagnosed PTSD in February 2001. There is
> no indication that this source has any competence in the
> area of PTSD or psychiatric diagnosis generally. This
> source notes claimant's history of lying under stress.
> Other notes from this source are found at 10E, offering an
> earlier diagnosis of dysthymic disorder.
>
> Notes from an ARNP in June 2002 indicate that the claimant
> has been stabilized regarding depression on medication.
> The ARNP endorsed claimant's stability and ability to
> continue in custody of her children. On July 15, 2002,
> the ARNP indicated claimant is starting a job. This work
> involved stocking Hallmark cards in stores, but claimant
> indicated that she stopped this after one week because of
> the demands of her custody battle.

(Tr. at 24, references to exhibits and cases omitted.) The question is whether these reasons are specific and legitimate to reject as non-severe Dr. Birdlebough's diagnosis of PTSD.

At step two of the sequential process, the ALJ must conclude whether Plaintiff suffers from a "severe" impairment, one which has more than a slight effect on the claimant's ability to work. To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND ENTERING JUDGMENT FOR DEFENDANT  - 6

will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, an overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of disabled. *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994). Thus, the Commissioner has passed regulations which guide dismissal of claims at step two. Those regulations state an impairment may be found to be not severe *only* when evidence establishes a "slight abnormality" on an individual's ability to work. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling 85-28). The ALJ must consider the combined effect of all of the claimant's impairments on the ability to function, without regard to whether each alone was sufficiently severe. *See* 42 U.S.C. § 423(d)(2)(B) (Supp. III 1991). The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-154.

The ALJ concluded Plaintiff's credibility was suspect, a conclusion that is borne out by the statements of witnesses and the police. (Tr. at 38, 129, 133.) Moreover, that finding is not challenged in this court. On February 13, 2001, examining psychiatrist Frederick Montgomery, M.D., diagnosed adjustment disorder with anxious and depressed mood; he did not recommend medication because it had not been effective and Plaintiff was

pregnant. He also noted her adjustment disorder was related primarily to her legal difficulties and was situational. (Tr. at 134.) Examining physician Dr. Toews, in May 2001, included PTSD but only as a rule-out diagnosis. (Tr. at 135-39.) Dr. Toews assessed Plaintiff's GAF at 58, her full scale IQ at 79, with a borderline range of working memory, low average perceptual organization and processing speed, and good visual processing and motor coordination skills.  Dr. Toews noted Plaintiff was independent for all activities of daily living.  She was responsible for the care of her three small children, ordinary household chores, and she slept and ate well.  He noted some naivete' and immaturity and a tendency to fantasize. (Tr. at 137.) Because Dr. Toews' diagnosis was based on independent clinical findings and objective tests, his conclusion constituted substantial evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  Additionally, it is consistent with other evidence in the record.

Dr. Vye, in January 2001, treated Plaintiff only for depression. (Tr. at 159.) Plaintiff's counselor of 18 months, Pat Brownwood, did not include PTSD as a diagnosis in September 2001, but found Plaintiff was suffering from a dysthymic disorder and post-partum depression. (Tr. at 124.) In February 2001, therapist Brownwood raised the issue of PTSD based only on Plaintiff's self-report of sexual assault during her teens, a report that is suspect in light of Plaintiff's credibility issues.  (Tr. at 168.) Accordingly, the ALJ gave specific and legitimate reasons for concluding PTSD was not severe.

2.   <u>Finding of Disability</u>

The ALJ also rejected Dr. Birdlebough's assessment that

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND ENTERING JUDGMENT FOR DEFENDANT  - 8

Plaintiff was disabled based on a global assessment of functioning score (GAF) of 48, indicating serious impairment, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION (DSM-IV), at 32 (1995), and that she was unable to work full-time. (Tr. at 181, 184.) The ALJ provided the following reasons for rejecting Dr. Birdlebaugh's opinion:

> Dr. Birdlebaugh offered the previously addressed opinion at Exhibit 10F.  In a report of August 6, 2002, this non-treating source indicated a GAF of 48 and diagnoses of Major Depression and PTSD.  I accord little weight to these diagnoses because it does not appear that Dr. Birdlebaugh explored the nature of the claimant's flashbacks.  Claimant reported a variety of symptoms, but her speech was normal.  Her posture was relaxed.  Her mood was reported as pretty good.  Her affect was sad but she was quite animated at times; she reported low energy but indicated that it was good today because she knew she had to get up and do things.  Her intellect appeared slightly below average.  She was accorded a GAF of 48.
>
> I accord little weight to Dr. Birdlebaugh's GAF, which appears to reflect claimant's difficulties with her husband (Axis I) and her legal problems.
>
> Moreover, I am assessing claimant's mental capacity on a longitudinal basis and the opinion of Dr. Birdlebaugh deals with her assessment (equivocal, as noted above) in the "snapshot" context of her examination of August 2002.  Notes at 8F3 indicate perfectly normal cognitive testing in July 2002 but some complaints that more medication is needed.  Assuming that claimant experienced a worsening of her depression (adjustment disorder with depression and anxiety, more likely, as indicated by other examiners) due to situational issues (litigation; spousal problems regarding her child not by him), there is no demonstration that this depression will persist at this greater level despite medication and other treatment for 12 months.

(Tr. at 24, references to some exhibits and cases omitted.)  Dr. Birdlebaugh noted normal clinical findings including relaxed posture, good eye contact, normal speech, good mood, animated affect despite sadness, normal long and short term memory, and a report of low energy tempered by an admission it was a good day because she had things to do.  (Tr. at 178, 180.)  Her assessment of GAF and

disability is also controverted by Dr. Toews' findings.

The ultimate issue of disability is reserved to the ALJ. See 20 C.F.R. § 404.1527(e) ("[w]e are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Here, Plaintiff testified she quit work because she was experiencing a high risk pregnancy (there are no medical records to substantiate that claim) and wanted to stay home with her children, not because of mental impairments. (Tr. at 33.) She also stated she worked two days power washing equipment, but left because she did not like the job. (Tr. at 34.) She left her work at Hallmark because of the demands of litigation involving custody of her oldest child. (Tr. at 43.) Moreover, her activities of daily living, including child care for three children, provide support for the ALJ's conclusion Plaintiff is not disabled. *Morgan v. Commission,* 169 F.3d 595, 599-600 (9th Cir. 1999) (the ALJ correctly determined an ability to fix meals, do laundry, work in the yard, and occasionally care for a child served as evidence of an ability to work).

3. <u>Lay Witness</u>

Plaintiff contends the ALJ did not properly reject the opinions of the lay witnesses, but relied only on generic, boilerplate language. The ALJ noted with respect to lay testimony:

> I have also considered lay statements at 5E and 7E. Exhibit 7E is conclusory and not illuminative, and Exhibit 5E indicates relative competence in several areas of everyday life; these two documents are not entirely consistent (e.g. on the issue of cooking.)
>
> I am unable to credit this lay testimony in this matter as

1         probative in terms of the ultimate issue of disability in
2         light of the medical and other factors of this case.  One
         reason for which an ALJ may discount lay testimony is that
3         it conflicts with medical evidence.  Material
         inconsistencies between claimant's testimony and other
4         evidence in the record are "germane" to discounting lay
         testimony.

5 (Tr. at 25-26.)  After reviewing the relevant case law, the ALJ
6 further concluded the lay testimony could not outweigh an analysis
7 of the objective and laboratory evidence and medical opinion of
8 record, and claimant's own credibility.  (Tr. at 26.)  These reasons
9 are specific and germane to the case at bar.  Although there is
10 inconsistent report of an ability to cook, the lay testimony from
11 claimant's father and aunt supports the ALJ's findings as to an
12 ability to perform daily activities associated with family life.
13 (Tr. at 101, 110.) Statements from her mother and father-in-law
14 support the ALJ's credibility finding; they also opined Plaintiff is
15 disabled based on emotional issues.  (Tr. at 129, 133.)  However,
16 their opinions conflict with the objective medical evidence; thus,
17 they were properly rejected. *Vincent on Behalf of Vincent v.*
18 *Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  The ALJ did not err.
19 4.   Step Four Assessment
20     Plaintiff contends the ALJ did not make sufficient step four
21 findings required by Social Security Ruling (SSR) 82-62, which
22 states that an ALJ's decision regarding the functional capacity to
23 perform past work "must be developed fully . . . clearly and
24 explicitly . . . presumptions, speculations and suppositions must
25 not be used."   Plaintiff asserts the SSA previously concluded
26 Plaintiff was not able to perform her past work as a cashier
27 secondary to public contact limitations.  (Tr. at 123.)  There is
28 also no explanation as to how a cashier would not need to be trusted

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND ENTERING JUDGMENT FOR DEFENDANT  - 11

with independent responsibility.

A residual functional capacity assessment (RFC) is "a more detailed assessment" of the psychiatric review technique form (PRTF). SSR 96-8P.  Mental limitations noted by Drs. Toews, Bailey and Gardner in the RFC and adopted by the ALJ included moderate limitations with respect to understanding and carrying out complex instructions, interacting appropriately with the general public, responding appropriately to changes in the work setting, and setting realistic goals. (Tr. at 154.)  The ALJ concluded Plaintiff would be limited to work not involving complex instructions or tasks, a vulnerable population, or independent responsibility.  (Tr. at 27.) The ALJ further concluded, based on Plaintiff's testimony, that her past work as a cashier did not expose her to interact with vulnerable populations and would not require interaction with the public beyond the superficial interaction required of everyday life. (Tr. at 27.)   He also noted Plaintiff had performed this work successfully for nine months.

Plaintiff asserts the SSA previously concluded Plaintiff was not able to perform her past work as a cashier secondary to public contact limitations.  (Tr. at 123.) Plaintiff also asserts the ALJ did not properly consider the limitation involving independent responsibility.

To find the claimant not disabled at step four, Plaintiff must be able to perform either (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001). Although the burden of proof is on

the claimant at step four, the ALJ still has the duty to make the requisite factual findings to support his conclusion. SSR 82-62 (1982). The Social Security Regulations provide an ALJ may draw on two sources of information to define the claimant's past relevant work as actually performed: (1) the claimant's own testimony, and (2) a properly completed vocational report. *Id.* Here, the ALJ relied on Plaintiff's testimony that she worked nine months as a retail cashier, ringing out orders and operating a cash register. (Tr. at 82, 91.) The ALJ found her work did not expose her to vulnerable populations and would not require interaction with the public beyond the superficial interaction required of everyday life. (Tr. at 27.) Thus, the public contact limitation was included in the analysis. There is no mention of the independent responsibility limitation. However, Plaintiff reported she worked six hours per day for a total of 20 hours per week. She did not quit that job because of mental issues, but rather because of her pregnancy.[2] There is no evidence she was unable to handle the independent responsibility aspects of the job, such as reports she required additional supervision. Rather, the evidence was to the contrary (Plaintiff was "well-liked"). (Tr. at 102.)

Plaintiff also contends the job was not SGA because her earnings in 1998 the year she was employed as a cashier totaled

---

[2] Even assuming Plaintiff were unable to perform her past work as a cashier, there is evidence in the record there was other work available if the analysis had proceeded to step five, including fish packer, landscape laborer, or commercial cleaner. (Tr. at 123.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND ENTERING JUDGMENT FOR DEFENDANT   - 13

1  $2,296.45, an average of $255.16 per month.  (Tr. at 18, 33, 77,
2  82.)  Plaintiff represented she worked 20 hours per week at $5.50
3  per hour; calculating those figures on a monthly basis, Plaintiff's
4  earnings averaged $440 per month (80 hours times $5.50 per hour).
5  20 C.F.R. § 404.1574a (average earnings for each separate period of
6  work).  As noted by Plaintiff, SGA was presumed from 1990 to 2000 if
7  earnings exceeded $300 per month.  20 C.F.R. § 404.1574(b)(3), Table
8  2.  Thus, there is evidence to support a finding her past work as a
9  cashier was SGA.  Accordingly,

10  **IT IS ORDERED**:

11  1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 11)** is
12  **DENIED.**

13  2.   Defendant's Motion for Summary Judgment dismissal **(Ct.
14  Rec. 15)** is **GRANTED.**

15  3.   The District Court Executive is directed to file this
16  Order and provide a copy to counsel for Plaintiff and Defendant.
17  The file shall be **CLOSED** and judgment entered for Defendant.

18  DATED May 5, 2005.

20              S/ CYNTHIA IMBROGNO
                UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND ENTERING JUDGMENT FOR DEFENDANT   - 14